**Affirmed and Memorandum Opinion filed February 18, 2021.**



**In the**

# 𝔉𝔬𝔲𝔯𝔱𝔢𝔢𝔫𝔱𝔥 ℭ𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

## NO. 14-19-00339-CR

**DARUIS D. WEATHERSBY, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 230th District Court
Harris County, Texas
Trial Court Cause No. 1454223**

## MEMORANDUM OPINION

In this appeal from an adjudication of guilt, appellant Darius Weathersby raises three issues. Appellant requests a new hearing on the State's motion to adjudicate because he asserts that he received ineffective assistance of counsel as a result of a statement his lawyer made to the trial court outlining the plea offers made to and rejected by appellant. In his second and third issues, appellant maintains that the trial court erred in "reassessing" a $300 fine and that it further erred in failing to conduct an ability-to-pay inquiry for the fine. Overruling

appellant's three issues, we affirm.

## I. BACKGROUND

Appellant was charged with the third-degree felony assault of a family member by impeding normal breathing. Tex. Penal Code Ann. § 22.01(a), (b)(2)(B). In May 2015, he pleaded guilty and received four years of deferred-adjudication community supervision contingent upon his compliance with the terms and conditions of the community supervision. Tex. Code Crim. Proc. Ann. arts. 42A.101, .104.[1] The order of deferred adjudication also required that appellant pay a $300 fine.

In September 2018, appellant was charged with the offense of evading arrest, and the State filed a motion to adjudicate appellant's guilt. The trial court found the State proved by a preponderance of the evidence that appellant intentionally fled from a peace officer lawfully attempting to detain him and that appellant failed to report as ordered to his community supervision officer. After granting the State's motion to adjudicate guilt, the trial court assessed punishment at imprisonment for 10 years and a $300 fine. Appellant appealed without filing a motion for new trial.

## II. ANALYSIS

### A. Ineffective assistance of counsel

In his first issue, appellant asserts he received ineffective assistance of counsel because his lawyer informed the trial court on the record of the plea offers he rejected.

---

[1] We cite to the relevant code sections in effect at the time appellant violated the terms of his community supervision. Though appellant received his deferred-adjudication community supervision pursuant to a predecessor statute, the language of the predecessor statute was substantively the same for purposes of this opinion.

### 1.    Applicable law and standard of review

"The right to counsel is the right to effective assistance of counsel." *Missouri v. Frye*, 566 U.S. 134, 138 (2012) (citing *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). To prevail on his claim that he did not receive effective assistance of counsel, appellant must show by a preponderance of the evidence that (1) counsel's performance fell below an objective standard of reasonableness and, (2) but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *Mitchell*, 68 S.W.3d at 642. A failure to make a showing under either prong defeats a claim for ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003).

There is a "strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance." *Strickland*, 466 U.S. at 689. Ineffective-assistance-of-counsel-claims "must be firmly founded in the record." *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). A "defendant must prove, by a preponderance of the evidence, that there is, in fact, no plausible professional reason for a specific act or omission." *Id*. at 836. Generally, "the record on direct appeal will not be sufficient to show that counsel's representation was so deficient and so lacking in tactical or strategic decision making as to overcome the presumption that his conduct was reasonable and professional." *Id*. at 833; *see also Rylander*, 101 S.W.3d at 110–11. We cannot speculate beyond the record provided and we must presume that the actions were taken as part of a strategic plan for representing the client. *See Rylander*, 101 S.W.3d at 110–11.

Trial counsel should ordinarily be given an opportunity to explain his

decisions before being found ineffective. *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012). Without such an opportunity, an appellate court should not find deficient performance unless the conduct at issue was clearly documented in the record and was "so outrageous that no competent attorney would have engaged in it." *Id*. (citation omitted).

## 2. Informing the trial court of the history of appellant's plea negotiations

After appellant confirmed his rejection of the State's plea offer in open court, the trial court asked his lawyer if there was anything he wanted to put into the record. Appellant's lawyer made the following statement:

> Just wanted the record to reflect that the State had, up until this week, offered eight years TDC on the resolution of this case. This week the chief prosecutor and I had discussed via e-mail that a resolution of four years concurrently on the new case and the probation adjudication old case, that this would be a proper resolution of the case. That offer was communicated to my client at the holdover. He and I discussed it on Tuesday at length and I believed at that time that we had an agreement.

> My understanding as of this morning is that Mr. Weathersby does not wish to accept that offer any longer and wishes to proceed with a hearing. I have advised my client that it is my advice to him that that offer is something that he should strongly consider. I did also advise him it's always his decision as to what to make, but I did advise him that that was a – I thought a reasonable offer under the facts and circumstances as I understand them. And I just want to make sure that – my understanding is also from the State that that offer will not be available after today.

Appellant argues that his lawyer had no need to inform the trial court of the specifics of the plea negotiations and that doing so was inappropriate and served no purpose. Although the Supreme Court has stated that "formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits,

all to ensure that a defendant has been fully advised before those further proceedings commence," we will assume without deciding there was no legitimate trial strategy served by appellant's lawyer informing the trial court of those negotiations. *Frye*, 566 U.S. at 146 (addressing measures prosecution and trial courts can adopt to "help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences").

Even so, appellant has not met his burden under the second prong of the *Strickland* analysis. *Strickland*, 466 U.S. at 693–94 ("It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding . . . [t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). Appellant relies upon *Coleman v. State* for the proposition that a court should avoid "even the appearance of involvement" in plea negotiations, though this statement was made in the context of the trial court taking a defendant in his chambers for a private meeting without a court reporter. 756 S.W.2d 347, 349 (Tex. App.—Houston [14th Dist.] 1988, no pet.).[2] In *Coleman*, this court found that the trial court's explanation of the difference between sentences running consecutively and concurrently, as well as describing for defendant the outcome of a recent jury verdict in a similar case was not an attempt to influence defendant to accept the state's plea bargain. *Id*. Therefore, this court overruled defendant's appellate argument that the trial court participated in the

---

[2] The Court of Criminal Appeals has stated that a trial court should not participate in any plea-bargain discussions until an agreement has been reached between the prosecutor and the defendant. *Perkins v. Court of Appeals for Third Supreme Judicial Dist. of Tex., at Austin*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987) (en banc) ("The reason for this suggestion is that the trial judge should always avoid the appearance of any judicial coercion or prejudgment of the defendant since such influence might affect the voluntariness of the defendant's plea.").

plea-bargaining stage of the trial. Similar to *Coleman*, the trial court here explained to appellant the punishment range as well as the State's burden of proof on the motion to adjudicate:

> Mr. Weathersby, you have an absolute right to a hearing on your motion to adjudicate. The burden of proof on that is much lower than it would be on your new case. The State would have to prove by the preponderance of the evidence that you violated your probation in some way that's alleged in the motion. I don't have that motion in front of me, but I've been assured that you have seen a copy of that and that has been discussed with your attorney. You also have an absolute right to a trial on your new case, the evading. You do not have to plea if you do not think you're guilty and you do not have to plea if you do not think you violated your probation. And even – even then you still have that absolute right. That being said, I believe the range of punishment on both of these cases is two to 10.
>
> . . . .
>
> Okay. In your motion to adjudicate hearing, that's the range of punishment that you will be facing, a minimum of two, a maximum of 10. Same thing with your new case if that should proceed to trial, minimum of two, maximum of 10. There are no guarantees on what will happen at those hearings. On the hearing to – on your motion to adjudicate, I would be the trier of fact. Meaning I would determine whether or not the State had proven by preponderance of the evidence that you violated your probation. And then I would assess your punishment in that range. At a trial you have the selection. You can select for a jury to hear that or you can select for the Judge to hear that. That would be something for you to do.

Though appellant generally argues that the trial court should not become involved in plea negotiations, he never identifies any specific statement or conduct on the part of the trial court reflecting inappropriate involvement in plea negotiations. The comments made by the trial court on the record after appellant confirmed he did not wish to accept the plea offer do not reflect any improper involvement in the plea-negotiation process. The trial court did not suggest or

coerce appellant to take a plea offer, nor did it try to further negotiations between appellant and the State. There is no indication in the record that the trial court prejudged the appellant. Therefore, we conclude the record does not support appellant's argument that his lawyer's comments caused the trial court to improperly become involved in the plea negotiations.

### 3. Exposing appellant to "trial tax"

Appellant further argues that his lawyer's actions informing the trial court of the plea offers rejected by appellant exposed appellant to the "trial tax." The term "trial tax" as used here by appellant refers to vindictive sentencing on the part of the trial court, as punishment, for appellant's exercise of his right to a hearing on the State's motion to adjudicate. Because he did not accept the plea offer from the State, appellant asserts he was punished with the maximum prison sentence.

Vindictive sentencing is a violation of due process. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort . . . ." *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978) (citing *North Carolina v. Pearce*, 395 U.S. 711, 738 (1969) (Black, J., concurring in part and dissenting in part)). In this appeal, appellant does not directly raise any claims of judicial vindictiveness. Therefore, we confine our review to whether appellant demonstrated there was a reasonable probability that but for his lawyer's comments on the record, the result of the motion to adjudicate would have been different. *Strickland*, 466 U.S. at 694.

Appellant has not shown that the result of his sentencing hearing would have been different. The primary legal authority relied on by appellant for this proposition is *Kyles v. Whitley*, which does not address any of the substantive issues raised in this appeal. 514 U.S. 419 (1995). In *Kyles*, the State failed to disclose evidence favorable to the petitioner and the Supreme Court of the United

States determined there was a reasonable probability the disclosure would have produced a different result at trial. *Id*. at 421–22. Here, appellant references *Kyles* to suggest that we cannot have confidence that the outcome of the motion-to-adjudicate hearing would have been the same without his lawyer's comments to the trial court. *Id*. at 453. ("But the question is . . . whether we can be confident that the jury's verdict would have been the same. Confidence that it would have been cannot survive a recap of the suppressed evidence and its significance for the prosecution.").

Appellant does not draw a causal connection between the statement made by his lawyer and the punishment assessed by the trial court, and is instead based upon pure speculation with no support in the record. A punishment that falls within the legislatively prescribed range, and that is based upon the sentencer's informed normative judgment, is unassailable on appeal. *Ex parte Chavez*, 213 S.W.3d 320, 323–24 (Tex. Crim. App. 2006) ("[W]e have described the sentencer's discretion to impose any punishment within the prescribed range to be essentially 'unfettered.'"). Here, appellant's punishment of ten years was within the legislatively prescribed range of punishment for the offense. Tex. Penal Code Ann. § 12.34. Though the punishment assessed by the trial court exceeded the sentence requested by the State at the hearing, the record does not reflect why the trial court assessed the maximum sentence. We cannot simply assume without more that it was the comments made by appellant's lawyer regarding plea negotiations that caused the trial court to assess the maximum sentence. The trial court heard testimony from several witnesses and received evidence that undoubtedly affected the assessment of punishment. Because appellant has not demonstrated a reasonable probability that but for the comments made by his lawyer on the record the outcome of the motion to adjudicate hearing would have been different, we

8

overrule appellant's first issue.

## B.    "Reassessment" of the $300 fine

Appellant argues that he should not be "reassessed" the $300 fine, because the record demonstrates that he "most likely paid the $300 fine." This argument is based on appellant's extrapolation that he should have been making payments during his probation, and the motion to adjudicate guilt did not allege that he failed to pay the fine. However, the bill of cost from the clerk's office does not reflect any payment for the fine and there is no affirmative evidence in the record demonstrating the fine was paid.

Even so, appellant's payment of the fine would not affect the propriety of the trial court assessing the fine as punishment in its judgment adjudicating guilt. While appellant was on community supervision, there was no finding of guilt and no final conviction unless the accused violated the terms of the community supervision, resulting in adjudication of guilt and assessment of punishment. *See Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004). When the trial court adjudicates guilt, the judgment adjudicating guilt sets aside the order deferring adjudication, including the previously imposed fine. *Id.* at 502. "After an adjudication of guilt, all proceedings, including assessment of punishment, pronouncement of sentence, granting of community supervision, and defendant's appeal, continue as if the adjudication of guilt had not been deferred." Tex. Code Crim. Proc. Ann. art. 42A.110. Though the trial court stated at sentencing, "[i]n addition to the 10 years TDC, I am reassessing the $300 fine that was originally placed on you with your deferred," there was no prior punishment to "reassess." Once a trial court adjudicates a defendant's guilt after previously deferring adjudication, the entire range of punishment is open to the court. *Taylor*, 131 S.W.3d at 501. Therefore, regardless of the trial court's description of the fine, the

9

trial court's assessment of a $300 fine was within the legislatively prescribed range. Tex. Penal Code Ann. § 12.34.(b) ("In addition to imprisonment, an individual adjudged guilty of a felony of the third degree may be punished by a fine not to exceed $10,000."). Appellant's second issue—his request to have the $300 fine deleted from the judgment—is overruled.

## C.    Ability-to-pay inquiry

In his third issue, appellant argues that the $300 fine should not have been reassessed without the court conducting an inquiry into appellant's ability to pay, and alleges no such inquiry was conducted in violation of statute. Tex. Code Crim. Proc. Ann. art. 42.15(a-1). Appellant further contends the statutory language directing trial courts to perform an ability-to-pay inquiry is an absolute requirement under *Marin v. State*, not requiring error preservation in the trial court. 851 S.W.2d 275, 280 (Tex. Crim. App. 1993). However, we need not reach that argument.

It is undisputed that no ability-to-pay inquiry was conducted on the record. However, the judgment clearly states that an inquiry was conducted: "After having conducted an inquiry into Defendant's ability to pay, the Court ORDERS Defendant to pay the fine, court costs, and restitution as indicated above." When a judgment contains a recital, as it does in appellant's case, "the burden is then on the accused to establish otherwise, if he claims that the contrary is true." *Breazeale v. State*, 683 S.W.2d 446, 451 (Tex. Crim. App. 1984) (en banc); *see also State v. Guerrero*, 400 S.W.3d 576, 583 (Tex. Crim. App. 2013) (written recitals "are binding in the absence of direct proof of their falsity"). "The presumption of regularity created by recitals in the judgment can be overcome only when the record otherwise affirmatively reflects that error occurred." *Breazeale*, 683 S.W.2d at 450. The record does not affirmatively reflect that an inquiry was not held off

the record. Therefore, appellant has not met his burden and we overrule appellant's third issue.

### III.  CONCLUSION

We affirm the trial court's judgment as challenged on appeal.


/s/      Charles A. Spain
Justice


Panel consists of Justices Jewell, Spain, and Wilson.

Do Not Publish — Tex. R. App. P. 47.2(b).